## AFFIDAVIT IN SUPPORT OF SEIZURE WARRANT

I, US Postal Inspector Alberto Sanabria, being duly sworn, depose and say as follows:

## I. IDENTITY AND EXPERIENCE OF AFFIANT

(1) I am an "investigative law enforcement officer" of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, that is an officer of the United States empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

(2) I am currently employed as a United States Postal Inspector with the United States Postal Inspection Service ("USPIS") and have been a Postal Inspector for the past ten years. During this time, I have been assigned to the Financial Crimes team and Prohibited Mailing Narcotics team where my duties include the investigation of fraud-related criminal statutes and prohibited mailing of controlled substances.

(3) I have received formal classroom training from the USPIS during the 12-week Postal Inspector Basic Training Academy in Potomac, Maryland. I have received formal instruction from U.S. Postal Inspectors as well as other federal, state, and local law enforcement agents who have done extensive work in the areas of mail fraud, money laundering, and the use of the U.S. mail to execute fraudulent acts.

(4) Based on your affiant's training, experience, and participation in financial crimes and narcotics investigations involving the use of the mails (including this investigation), your Affiant knows:

   a. The United States Postal Service mail system is frequently used to transport controlled substances and/or the proceeds from the sales of controlled substances to areas throughout the United States.

   b. That individuals engaged in the illegal transportation of controlled substances often place assets in other persons' names and in the name of corporate entities to avoid detection and seizure of those assets by law enforcement officers;

   c. That individuals involved in the manufacturing, sale, and distribution of controlled substances often establish businesses to make it appear as if they have legitimate sources of income, and they often deposit drug proceeds to the bank accounts of these businesses to make it appear as though the drug proceeds were earned by legitimate business activities; and

(d) That where an individual's income cannot account for the level of wealth displayed and where evidence of drug trafficking exists, there is probable cause that the item of wealth is either a direct product of illicit activity or is traceable thereto.

(5) In addition to the investigation by your affiant, this matter is being investigated by the U.S Food and Drug Administration, Office of Criminal Investigation (FDA-OCI). The information contained in this affidavit is a summary of documents and evidence collected by the participating agencies, and the financial analysis performed by an auditor at the United States Attorney's Office in the Eastern District of North Carolina. The underlying sources of information, all of which are deemed to be reliable for use in this federal investigation, include interviews of witnesses, records received pursuant to grand jury subpoenas, and other reliable sources.

(6) This affidavit contains only those facts which are sufficient and necessary to promote the purpose of the affidavit, described below. This affidavit should not be construed to contain all facts known to your affiant and the investigating agencies regarding the matter under investigation.

## II. PURPOSE OF THE AFFIDAVIT

(7) I make this affidavit in support of an application for the issuance of a criminal and civil seizure warrant authorized under 18 U.S.C. § 981(b) and 21 U.S.C. § 853(f) to seize the funds and assets described below (collectively, the "Subject Assets") that are subject to forfeiture to the United States:

a. Bank of America account number 2370 4022 1366 in the business name "Mark Meland Sole Prop DBA Copy Proz" ("BoA Account *1366" or "Copy Proz Account");

b. Bank of America account number 2370 4360 0007 in the name of Mark Meland ("BoA Account *0007" or "Personal Account");

c. Bank of America account number 2370 3777 4761 in the name "Mark Meland Sole Prop DBA Madison James Research" ("BoA Account *4761" or "MJR Account");

d. First Bank account number 0341014192 in the name "Nancy H Terry DBA Hoover Pilot Car Service" ("FB Account *4192" or "Hoover Pilot Account").

(8) The Subject Assets are involved in, or contain proceeds derived from or traceable to certain federal offenses, referred to herein as the "Subject Offenses." The Subject Offenses are identified as follows:

   a. Distribution of a Schedule III controlled substance, in violation of Title 21 United States Code Section 841;
   b. Conspiracy to distribute a controlled substance, in violation of Title 21 United States Code Section 846;
   c. Maintaining a drug-involved premises, in violation of Title 21 United States Code Section 856;
   d. Money laundering, in violation of Title 18 United States Code Section 1956 and 1957.

## III. INVESTIGATION OVERVIEW

### a. OVERVIEW OF SUBJECTS

(9) Mark James Meland is an individual living in the Middle District of North Carolina, with his primary residence located at 192 Rosalyn Road Rockingham, NC 28379.

(10) Meland is the registered owner of Copy Proz, a printing/copying business in Rockingham, North Carolina. The business was registered in 2018, with the principal address, at the time of filing, listed as "607 A East Broad Ave Rockingham NC 28379."

(11) Meland is also the registered business owner of Madison James Research. The North Carolina business certificate, filed in September 2021, lists the nature of the business as "supplement research," with the address "607-A East Broad Ave., Rockingham, NC 28379."

(12) The investigation revealed that both Madison James Research and Copy Proz were initially operating out of 607-A East Broad Ave. Rockingham, NC 28379, but have since moved to a new location: 504-C East Broad Ave. Rockingham, NC 28379.

(13) Neither Meland nor his businesses are registered with the FDA to engage in the manufacturing, preparation, propagation, compounding, or processing of drugs, nor are they registered as food facilities. Likewise, the United States Drug Enforcement Administration has not assigned Meland a DEA Registration Number that would authorize him to research, manufacture, or dispense controlled substances.

(14) Nancy Hoover Terry, an associate of Meland, registered the business Hoover Pilot Car Service under her name in June 2022. The principal business location is 149 McLeod St. Rockingham, NC 28379.

(15) Noah Rasdon is the owner of the business Magic Nutrition, a vitamin supplement shop located in Arkansas. Magic Nutrition is a large purchaser of products from the Madison James Research website (described further below).

### b. OVERVIEW OF SUBJECT WEBSITE

(16) Meland's company, Madison James Research, is linked to the website www.madisonjamesresearchchems.com (hereinafter "Subject Website"). The Subject Website is an e-commerce website offering a variety of FDA-regulated products for sale, including drugs as defined by the FDCA.

(17) Based on the investigation, probable cause exists to believe that the Subject Website is also being used to support and conceal the purchase of controlled substances. The Drug Enforcement Administration publishes the *Lists of Scheduling Actions, Controlled Substance, Regulated Chemicals*,[1] which is referred to as an "orange book." According to the publication dated July 2023, products for sale on the Subject Website or concealed through the Subject Website are categorized as controlled substances. For example, Testosterone (17ß-hydroxyandrost-4-en-3-one), is a Schedule III controlled substance. Modafinil is listed as a Schedule IV controlled substance.

(18) Products can be purchased from the Subject Website using a variety of payment methods, including: eCheck (through eDebitDirect), Western Union, Zelle, Cash App, Apple Pay, Venmo, Green Dot (MoneyPak) and "secure credit card processing." The latter of which states an invoice will be requested from "HOOVER PILOT CAR SERVICE."

(19) Proceeds from customer purchases on the Subject Website are traceable to Meland and the Subject Assets, as described further below.

### c. OVERVIEW OF FINANCIAL ASSETS

(20) BANK OF AMERICA Bank Account 2370_3777_4761 ("BoA Account *4761" or "MJR Account") is a checking account held by MARK MELAND SOLE PROP DBA MADISON JAMES RESEARCH and Mark Meland had operational control of this account.

---

[1] https://www.deadiversion.usdoj.gov/schedules/orangebook/orangebook.pdf

a. Electronic payments from customers were deposited into this account. Total deposits into this account, excluding transfers between affiliated accounts, between January 2018 and July 2023 totaled not less than $1,296,917.

b. The last known balance of BoA Account *4761 as of July 31, 2023, was $781.07.

(21) BANK OF AMERICA Bank Account 2370_4022_1366 ("BoA Account *1366" or "Copy Proz Account") is a checking account held by MARK MELAND SOLE PROP DBA COPY PROZ and Mark Meland had operational control of this account.

a. Electronic payments from customers were deposited into this account. Total deposits into this account, excluding transfers between affiliated accounts, between March 2019 and July 2023 totaled not less than $3,497,980.

b. The last known balance of BoA Account *1366 as of July 31, 2023, was $617,810.56.

(22) BANK OF AMERICA Bank Account 2370_4360_0007 ("BoA Account *0007" or "Personal Account") is a checking account held by MARK MELAND and Mark Meland had operational control of this account.

a. Electronic payments from customers were deposited into this account. Total deposits into this account, excluding transfers between affiliated accounts, between August 2020 and August 2023 totaled not less than $2,098,371.

b. The last known balance of BoA Account *0007 as of August 29, 2023, was $73,742.19.

(23) FIRST BANK Account 341014192 ("FB Account *4192" or "Hoover Pilot Account") is a checking account held by NANCY HOOVER TERRY DBA HOOVER PILOT CAR SERVICE.

a. Electronic payments from customers were deposited into this account. Deposits into this account between July 2022 and August 2023 totaled not less than $394,680.

b. The last known balance of FB Account *4192 as of August 31, 2023, was $16,046.58.

## IV. FACTS SUPPORTING PROBABLE CAUSE

(24) Your affiant believes that a substantial portion of the money Meland has in his bank accounts (Subject Assets) are proceeds from selling controlled substances through his online website.

(25) Your affiant is aware that courts have determined where an individual income cannot account for the level of wealth displayed, and where drug trafficking exists, there is probably cause that the item of wealth is either a direct product of illicit activity or is traceable thereto.

### a. UNDERCOVER PURCHASES

(26) As part of the investigation into Meland and Madison James Research, agents engaged in multiple undercover purchases of products offered for sale on the Subject Website.

(27) UC-Purchase 1: On or about July 15, 2022, an agent used a fictious name and undercover email address (hereinafter "UC email address") to make a purchase of products through the Subject Website.

   a. The products purchased were "MK-677" and "Modanifil.[2]" The Subject website stated: "Modafinil reduces extreme sleepiness due to narcolepsy and other sleep disorders." The DEA lists Modafinil as a Schedule IV controlled substance.[3]

   b. The payment method chosen by the agent was "secure credit card processing."

   c. After placing the order, the UC email address received a purchase confirmation email, identified as order number 34203.

   d. After placing the order, the UC phone number received a text messaged invoice from Hoover Pilot Car Service. The message included a link for an invoice generated through the payment service PaymentsHub. The invoice number was 34203 and referenced the purchase as "Madison James Research – Base Price," without providing an itemized list of products purchased.

---

[2] It is believed that the Subject Website, in places, has a misspelling of the product Modafinil as "Modanifil."
[3] *Lists of Scheduling Actions, Controlled Substance, Regulated Chemicals, "DEA orange book,"* https://www.deadiversion.usdoj.gov/schedules/orangebook/orangebook.pdf

Payment was made though PaymentsHub using a UC credit card in the amount of $127.25.

(28) On or about July 25, 2022, the agent retrieved a package from a UC commercial mailbox that had been shipped interstate via the United States Postal Service, from North Carolina to Florida.

   a. The return address on the package was "C.P. 607A East Broad A[sic] Rockingham NC 28379." Your affiant believes the initials "C.P." on the return address are for the business Copy Proz, owned by Meland, and located at the same address.

   b. The package contained black bottles containing capsules, separately labeled "Modanifil" and "MK-677." The label on both bottles indicated branding of "MJR Laboratories."

   c. The products received were sent to the FDA Forensic Chemistry Center ("FCC") for testing. The FCC analysis revealed that the capsules from the bottle labeled "Modanifil" contained Tamoxifen and Finasteride, but no Modafinil (Schedule IV controlled substance) was found in the capsules.

(29) UC-Purchase 2: On or about February 7, 2023, agents made a second undercover purchase of products from the Subject Website.

   a. The purchase included the products GLP-1 Semaglutide 10mg, Tadalafil/Sildenafil capsules, and Modanifil capsules – all of which are medications requiring a prescription but not scheduled controlled substances. Madison James Research did not require a prescription to complete the purchase and no prescription was provided.

   b. The order was identified as number 37900. Invoice number 37900 from Hoover Pilot Car Service was later received at the UC email address and payment was made by a UC credit card in the amount of $253.00, similar to UC Purchase 1.

(30) On or about February 14, 2023, the agent received the products from UC Purchase 2.

   a. The Tadalafil/Sildenafil and Modanifil products were shipped in black plastic bottles and the GLP-1 Semaglutide was a white powder in a glass ampule. The labels on all three products were branded as "MJR Laboratories." None of the labels or labeling for these three products contained any directions for use. FDA

Forensic Chemistry Center testing results on these products are still outstanding.

b. The products had been shipped interstate through the United States Postal Service, from North Carolina to Florida. Tracking records show the package passed through the Eastern District of North Carolina, with a stop at a USPS distribution center in Fayetteville, North Carolina.

c. The return address on the package was "C.P. 607A East Broad Avenue Rockingham NC 28379." The contents of the package were shipped using the same modus operandi of packing the products in USPS shipping materials, as with UC Purchase 1.

(31) <u>UC-Purchase 3</u>: This undercover purchase was initiated based on an email exchange regarding the sale of testosterone. Beginning on or about July 31, 2023, madisonjamesresearch@gmail.com offered to sell the agent (through his UC email address) 10 bottles of "test"[4] for $200. The email stated that the agent should place a purchase for an equivalent amount of products through the Subject Website. A credit card invoice would then be sent, and the "test" would be shipped in lieu of the products ordered.

a. Following these instructions, on or about August 2, 2023, the agent placed an order for two bottles of Tadalafil/Sildenafil and two bottles of Tamoxifen from the Subject Website, which equaled $200.

b. An invoice was subsequently received from Hoover Pilot Car Service, with the invoice line stating "MJR-Base Price (1)." Payment in the amount of $208.00 (including $8 shipping) was made to Hoover Pilot Car Service through a UC credit card.

(32) The purchase was received on or about August 8, 2023. It contained 10 vials that were labeled as "TESTOSTERONE ENANTHATE 300mg" at 10ml each vial. The vials' labels displayed the brand FITZ Scientific. They did not display an "RX Only" statement but did state "DR. AUTH REQUIRED."

a. The package's return address was "C.P. 504C East Broad Avenue Rockingham NC 28379" (SUITE C). The products had been shipped

---

[4] Based on the agent's knowledge and experience, "test" was understood as an abbreviation for testosterone, a Schedule III controlled substance. Further, testosterone and many of the products offered on the Subject Website are commonly used within the bodybuilding/fitness community to increase muscle and enhance physique.

Page **8** of **20**

interstate through the United States Postal Service, from North Carolina to Florida.

b. On or about September 15, 2023, FCC lab testing confirmed the vials contained testosterone enanthate (a Schedule III controlled substance). No additional Active Pharmaceutical Ingredients (APIs), controlled substances, or steroids were identified.

### b. SURVEILLANCE

(33) Agents conducted surveillance of Meland's businesses, located at 504 E. Broad Avenue in Rockingham, North Carolina. On or about June 6, 2023, and July 7, 2023, agents photographed and recovered trash from a dumpster located outside of Meland's office building.

(34) The items recovered during the trash pulls suggest Meland is manufacturing and packaging products to sell on his Subject Website. These items include, empty bottles of Propylene Glycol, an empty bottle of Everclear grain alcohol with a handwritten marking "Tad/Sild," printouts of email confirmations for Subject Website products, empty boxes of insulin syringes, empty glass vials, an empty box labeled "Empty Hard Gelatin Capsules," and labels for "BA Water 5ml."

### c. GOOGLE SEARCH WARRANT

(35) On or about May 10, 2023, a search warrant was issued out of the Eastern District of North Carolina to search Google accounts associated with Madison James Research and Copy Proz. This search warrant included the address madisonjamesresearch@gmail.com.

(36) Records from the Google account history showed queries related to drug manufacturing and controlled substances such as steroids and testosterone. Email records received showed evidence of manufacturing products for the website. For example, in an email chain in November 2021, a customer inquired into how many capsules Madison James Research can make at one time. The email response from madisonjamesresearch@gmail.com was: "600 in 15 minutes…" "I have 6 of the semiautomatic machines."

(37) The Google records also revealed attempts to hide the nature of the Madison James Research business. Instructions were given to website customers to use deceptive descriptions of the Subject Website order, in order to not be scrutinized by payment processors. For example:

a. In an email chain beginning on April 18, 2023, Madison James provides instructions for payment through Venmo and states "Please put for Groceries Donation No Order Numbers. Venmo shuts us down when they see stuff about orders. Just payment and email it to us! Any order info your payment will force us to refund and delete your order. Thanks."

b. In an email chain beginning on April 19, 2023, Madison James also instructed for a customer to state the purchase was related to "Groceries Donation," for a payment being made through the processor CashApp.

c. On or about January 20, 2023, an order confirmation was sent to the purchaser "Matt Houser" for Tadalafil Capsules. Houser is a repeat customer of Madison James Research and was previously instructed to use "Groceries Donation" as a description for a purchase he made through Venmo in September 2020.

(38) Records obtained from Venmo corroborate information uncovered in the google search. Between March 2020 and December 2022, there were more than 1,750 separate Venmo transactions totaling more than $334,000 paid to the Venmo accounts of Nancy Hoover and Mark Meland that included notes with deceptive descriptions, including, but not limited to "Grocery Donation", "Furniture", "Dance Lessons", "Pizza", "Textbooks" and "School Supplies."

(39) The email account records also showed Madison James Research in regular communication, by email, with an individual identified as Noah Rasdon. Rasdon frequently sends orders for a variety of products, including controlled substances, on behalf of third-party customers. Rasdon will provide the names of products, the quantities of products, and a name and address to ship the order to. These orders are subsequently filled and sent via FedEx package to Rasdon, or the third-party customer directly.

(40) Evidence found in the email communications shows that between August 1, 2022 and April 18, 2023, Rasdon sends money to Meland for controlled substances orders of third parties. For example:

a. On or about August 1, 2022, Rasdon sent an order to Madison James Research on behalf of Ray Koga. The order included 50 units of Testosterone Enanthate (300mg), 50 units of Anavar, 50 units of

Winstrol, 50 units of Anadrol, and 50 units of D-Bol[5] (all Schedule III controlled substances). According to FedEx, two packages were sent from Mark Meland to Ray Koga in Nampa, ID on August 1, 2022. According to Bank of America, Magic Nutrition sent an ACH transfer to Meland's Copy Proz account (BoA Account *1366) on August 1, 2022 for $6,964 and on August 3, 2022 for $5,420. All of the proceeds of this order appear to be from the sale of controlled substances.

b. On or about December 7, 2022, Rasdon sent an order to Madison James Research on behalf of Dallas Dierlam in Corpus Christi, TX. The order included four packs of Tren A[6] and 3 packs of Winny[7] (both Schedule III controlled substances). Approximately 44% of the total ordered items appear to be controlled substances. According to FedEx, a package was sent from Meland to "Dalla Dierlam" in Corpus Christi, TX on December 8, 2022.

c. On or about March 1, 2023, Rasdon sent an order to Madison James Research on behalf of Brandon Kelly. The order included seven units of Deca[8], 40 units of Test E[9], four units of Anadrol, four units of Dbol, and four units of Winstrol (all Schedule III controlled substances). At least 37% of the total ordered items appear to be controlled substances. According to FedEx, a package was shipped from Meland to Brandon Kelly in Porter, TX on March 17, 2023.

d. In an email chain starting on or about March 1, 2023, Rasdon sent an order to Madison James Research on behalf of John Ugent. The order included 50 units of Deca, 30 units of Tren A, and 100 units of Test E (all Schedule III controlled substances). According to FedEx, a package was shipped from Meland to John Ugent in

---

[5] Based on my training, experience, research, and familiarity with Madison James Research, I recognize this as a commonly used nickname for Dianabol, a Schedule III controlled substance.

[6] Based on my training, experience, research, and familiarity with Madison James Research, I recognize this as a commonly used nickname for Trenbolone, a Schedule III controlled substance.

[7] Based on my training, experience, research, and familiarity with Madison James Research, I recognize this as a commonly used nickname for Winstrol.

[8] Based on my training, experience, research, and familiarity with Madison James Research, I recognize this as a commonly used nickname for Deca-Durabolin, a Schedule III controlled substance.

[9] Based on my training, experience, research, and familiarity with Madison James Research, I recognize this as a commonly used nickname for Testosterone Enanthate, a Schedule III controlled substance.

Case 1:23-mj-00392-JLW   Document 1-1   Filed 09/22/23   Page 11 of 20

Miami, FL on March 15, 2023. All of the items ordered appear to be controlled substances.

    e. On or about March 22, 2023, Rasdon sent an order to Madison James Research on behalf of Ray, with the subject line "Ray Special Order Shipped to Ray". The order included 300 units of Test E and 100 units of Anavar (both Schedule III controlled substances), among other items. All of the items ordered appear to be controlled substances. According to FedEx, 73 packages were shipped from Meland to Ray Koga in Nampa, ID on March 24, 2023. The shipment also contained a reference line for the recipient as Warrior Labz.

    f. On or about March 29, 2023, Rasdon sent an order to Madison James Research on behalf of John Ugent. The order included 50 units of Test E and 50 units of Anavar (both Schedule III controlled substances). It appears that all of the items ordered were controlled substances. According to FedEx, Meland sent a package to Ugent in Miami, FL on March 31, 2023. 100% of the items ordered appear to be controlled substances.

    g. On or about April 10, 2023, Rasdon sent an order to Madison James Research on behalf of Mike J in Coalgate, OK. The order included 25 units of Test E, 15 units of Dbol, and 15 units of Winny (all Schedule III controlled substances). According to FedEx, Meland sent a package to Mike J in Coalgate, OK on April 13, 2023. It appears that all of the items ordered were controlled substances.

    h. On, or about, April 18, 2023, Rasdon sent an order to Madison James Research on behalf of Justin Abbott in Cabot, Arkansas. The order included five units of Tren A (a Schedule III controlled substance). At least 16% of the total items ordered appear to be controlled substances. According to FedEx, Meland sent a package to Justin Abbott in Cabot, AR on April 19, 2023.

### d. **BANK OF AMERICA RECORDS**

(41) Investigators received Bank of America records pertaining to accounts held by Meland or the Subject Businesses. Meland opened an account under the business name "Mark Meland Sole Prop DBA Copy Proz," on or about March 19, 2019 (BoA Account *1366). The bank records show that this account has received over $768,000 in credits from Magic Nutrition Between February 2022 and June 2023.

(42) The Bank of America records revealed that Magic Nutrition made at least 95 ACH payments to Meland's Copy Proz Account *1366 in 2022 and through June 2023.[10] Beginning in June 2023, Rasdon began sending wires to Meland from an account held in Rasdon's personal name. Approximately $89,000 was wired from Rasdons' personal account to Meland's Copy Proz Account *1366 between June and August 31, 2023.

(43) Between August 1, 2022 and April 18, 2023, the same time frame as Rasdon's purchases of controlled substances, Bank of America records show that Meland transferred no less than $369,000 from Copy Proz Acount *1366 to his Personal Account *0007. Additionally, during this same time frame, Meland transferred no less than $112,295 from Copy Proz Account *1366 to MJR Account *4761. For example:

   a. On October 27, 2022, a $100,000 transfer was made from Copy Proz Acct *1366 to Personal Account *0007. On the same day, Meland wired $100,704 from his Personal Account *0007 to Prestige Motor Car Imports.

   b. On January 10, 2023, two transfers were made from Copy Proz Account *1366 to Personal Account *0007 for $100,000 and $119,000. Meland then sent a wire for $449,496.48 from his Personal Account *0007 to Williams Deane and Herndon, at First Bank, with the reference "PHFMKRJXR /ACC/Closing for Meland." On the same day a deed was filed in Richmond County, NC for 192 Rosalyn Rd. Rockingham, NC 28379. The deed identified Meland as the Grantee and was filed by Williams, Deane & Herndon.

   c. On February 3, 2023, a transfer was made from Copy Proz Acct *1366 to MJR Acct *4761 for $50,000. On this same day, a check cleared the MJR Acct *4761 for $45,000 (check dated February 2, 2023). This check was written to Diffenbach Superstore. The memo line read "Truck Down Payment."

(44) Based on records obtained from First Bank, agents noted that on or about September 21, 2022, an international transaction in the amount of $4,600, was wired from Hoover Pilot Account *4192, for the benefit of Shenzhen Shiwei Technology Co. Ltd.

(45) Based on records obtained from Bank of America, on or about March 6, March 22 and May 4, 2023, agents noted three international

---

[10] Prior to this time, seven wires were sent from Magic Nutrition to Meland between December 2021 and February 2022, for a total of $29,550.

transactions, in the amounts of $10,210, $6,000, and $5,250 respectively, wired from Copy Proz Account *1366, routed through Deutsche Bank for the benefit of Shenzhen Shiwei Technology Co. Ltd.

(46) During a search of google records agents noted the following: Email # 224250: Madison James Research emailed an order to SW Peptides. The order included Testosterone (1kg) and Trenbolone (400g). The $10,210 is a partial payment on this order. The remainder was paid by Bitcoin ($1,500). SW Peptides sent Madisonjamesresearch@gmail.com instructions to wire the funds to its bank account in the account name Shenzhen Shiwei Technology Co. Ltd at Deutsche Bank. Madison James Research made the wire on March, 6, 2023.

(47) Agents were able to confirm through email evidence that Shenzhen Shiwei marketed directly to Madisonjamesresearch.com by email a product list containing the following scheduled drugs: Testosterone, Oxandrolone, Stanozolol, Oxymetholone, Trenbolone, Nandrolone. SW Peptides frequently emailed Madisonjamesresearch@gmail.com with offers to sell the above mentioned products.

### e. FIRST BANK RECORDS

(48) Records from First Bank revealed that account number 0341014192 ("Account *4192" or "Hoover Pilot Account") is a business account opened by Nancy Hoover Terry, under the name "NANCY H TERRY DBA HOOVER PILOT CAR SERVICE".

(49) The First Bank records show that between July 2022 and August 2023 there were no less than $384,900 in deposits into the Hoover Pilot Account *4192 from NorthAmerican Bancard, a credit card processing service, for merchant account number 3130033563778.

   a. Records from NorthAmerican Bancard show that account number 3130033563778 is an account held by Terry Hoover to process credit card transactions for Hoover Pilot Car Service.

   b. As noted above, customers who purchase products on the Subject Website and elect to pay by credit card, are sent an invoice from "Hoover Pilot Car Service."

(50) Additionally, Hoover Pilot Account *4192 is used to make payments to companies associated with components in the manufacturing of drugs. For example, in August 2023, shortly after UC-Purchase 3, payments

were made to Med Lab Supply ($339.80) and Capsule Supplies ($862.80), both companies that sell components used to manufacture drugs.

(51) Each month, cash is withdrawn from Hoover Pilot Account *4192 from various ATMs in North Carolina. For example, shortly after UC-Purchase 3 the following transactions occurred:

   a. 8/3/23: $602 was withdrawn at a SECU[11] ATM in Hamlet, NC
   b. 8/4/23: $602 was withdrawn at a SECU ATM in Hamlet, NC
   c. 8/10/23: $602 was withdrawn at a SECU ATM in Hamlet, NC
   d. 8/11/23: $602 was withdrawn at a SECU ATM in Hamlet, NC
   e. 8/17/23: $602 was withdrawn at a SECU ATM in Hamlet, NC
   f. 8/18/23: $602 was withdrawn at a SECU ATM in Hamlet, NC
   g. 8/24/23: $602 was withdrawn at a SECU ATM in Hamlet, NC
   h. 8/31/23: $602 was withdrawn at a SECU ATM in Hamlet, NC

(52) Agents also noted corresponding withdrawals from Meland's Personal Account *0007, on the same date and location. For example:

   a. 8/3/23: $602 was withdrawn at a SECU ATM in Hamlet, NC
   b. 8/4/23: $602 was withdrawn at a SECU ATM in Hamlet, NC
   c. 8/10/23: $602 was withdrawn at a SECU ATM in Hamlet, NC
   d. 8/11/23: $602 was withdrawn at a SECU ATM in Hamlet, NC
   e. 8/17/23: $602 was withdrawn at a SECU ATM in Hamlet, NC
   f. 8/18/23: $602 was withdrawn at a SECU ATM in Hamlet, NC
   g. 8/24/23: $602 was withdrawn at a SECU ATM in Hamlet, NC

### f. SEARCH WARRANT

(53) On September 20, 2023, law enforcement executed a search warrant at Meland's business locations and residence in Rockingham, North Carolina. Law enforcement agents found evidence of manufacturing, packaging, and shipping controlled substances from these locations.

(54) In particular, when law enforcement entered "Suite A," one of three business office suites occupied by Meland, containers of controlled

substances were found inside lockers. The contents of these containers have not yet been analyzed, but the preliminary evidence suggests Meland stored controlled substances, and products commonly known to be mixed with controlled substances, in these locations for use in his illegal drug shipments.

(55) Dozens of bottles containing liquids were seized from this location. Many of the bottles were clearly labeled with names your affiant recognizes as references to Schedule III controlled substances, specifically testosterone and steroids. In a preliminary review of the evidence seized, the below items contained labels (either the medication name, brand name, or commonly used nickname) recognized as Schedule III controlled substances:

   a. 21 bottles with labels for Sustanon (Testosterone isocaproate)

   b. 12 bottles with labels for Testosterone Enanthate (Test E)

   c. 11 bottles with labels for Primobolan (Metenolone enanthate)

   d. 10 bottles with labels for Tren A (Trenbolone)

   e. 4 bottles with labels for Winstrol (Stanozolol)

   f. 4 bottles with labels for Anavar (Oxandrolone)

   g. 4 bottles with labels for Deca-Durabolin (Nandrolone)

(56) In addition to controlled substances in liquid form, law enforcement also seized hundreds of small silver bags containing cuspules. These packaged bags also contained labels recognized as controlled substances, including 390 bags with labels for Dianabol (Methandienone), 12 bags labeled as Winstrol, 9 bags labeled as Primbolan, and 6 bags labeled as Sustanon.

(57) The search also identified a number of components of manufacturing, such as capsules and packaging materials. Meland made unprotected statements to law enforcement that he used grapeseed oil to manufacture testosterone and steroids. Nearly a dozen bottles labeled "grapeseed oil" were seized from Suite A. He also admitted to making the liquid products, to include testosterone and steroids, at his house in Rockingham, North Carolina.

(58) Meland also made statements to law enforcement regarding his financial relationship with Rasdon and Magic Nutrition. Meland confirmed he receives orders from Rasdon on behalf of other customers.

Meland would ship products to the customers, and then receive proceeds from Rasdon for the purchase. A customer, identified by Meland as Ray Koga, accounted for approximately 80% of the orders placed by Rasdon.

(59) In addition to finding controlled substances and component parts during the search, law enforcement officers also seized $169,983 in cash from Meland's residence and businesses.

## V. CONCLUSION

(60) Based on the information in the preceding sections, your affiant believes there is probable cause that each of the Subject Offenses were committed, as alleged.

(61) There is also probable cause to believe that substantial proceeds from the sale of controlled substances have been deposited or transferred into BoA Account *1366, BoA Account *4761, BoA Account *0007, and FB Account *4192.

    a. Specifically, although it is not possible to state with certainty the exact amount of proceeds contained in each account, based on information obtained through this investigation as detailed above, it is estimated that approximately $340,000 in proceeds were deposited into BoA Account *1366 from Magic Nutrition as a result of the sale of controlled substances to a single customer, Ray Koga.[12] This figure does not account for sales of controlled substances to other customers as evidenced by the large quantities of testosterone and other Schedule III controlled substances recovered from Leland's business during the execution of the search warrant on September 20, 2023.

    b. Furthermore, the $208.00 in proceeds derived from UC-Purchase 3 was paid via credit card. All credit card income, including proceeds from other customers who might have paid for controlled substances purchases via credit card, is deposited into FB Account *4192.

    c. As noted above, since August 2022, Meland has transferred at least $369,000.00 from BoA Account *1366 into BoA Account *0007 and

---

[12] Bank records show $427,000 deposited from Magic Nutrition to Meland's BoA Account *1366, between August 1, 2022 and April 18, 2022. Using bank records and Meland's statement that 80% of the orders through Magic Nutrition came from Ray Koga, the amount attributed to Koga alone is $340,000 in proceeds. In a sampling of email records of orders sent to Koga, all of the products shipped by Meland were controlled substances.

at least $112,295 from BoA Account *1366 into BoA Account *4761. Because the evidence shows that BoA Account *1366 has been used to receive proceeds derived from the sale of controlled substances since at least August 2022, probable cause exists to believe these transfers contained drug proceeds, although precise tracing is not possible under the circumstances.

(62) Proceeds traceable to the sale of controlled substances in violation of the Controlled Substances Act are subject to seizure and forfeiture pursuant to 21 U.S.C. § 853(a)(1) and 21 U.S.C. § 881(a)(6).

(63) Furthermore, there is probable cause to believe that BoA Account *1366 and FB Account *4192 have been used to facilitate a violation of the Controlled Substances Act. Specifically, on or about September 21, 2022, $4,600 in funds were wired from FB Account *4192 to Shenzhen Shiwei Technology Co. Ltd., a supplier of controlled substances. Again between March 6 and May 4, 2023, a total of $21,460 in funds were wired from BoA Account *1366 to Shenzhen Shiwei Technology Co. Ltd.

(64) Property that has been used or is intended to be used to facilitate a violation of the Controlled Substances Act is subject to seizure and forfeiture pursuant to 21 U.S.C. § 853(a)(2) and 21 U.S.C. § 881(a)(6).

(65) Additionally, there is probable cause to believe that the aforementioned wire transfers from BoA Account *1366 and FB Account *4192 to Shenzhen Shiwei Technology Co. Ltd, which your affiant knows to be located in China, involved the transfer of funds from a place inside the United States to or through a place outside the United States with the intent to promote the carrying on of specified unlawful activity[13] by paying for a supply of controlled substances, in violation of a money laundering statute, 18 U.S.C. § 1956(a)(2)(A).

(66) Moreover, there is probable cause to believe that Meland has engaged in multiple transactions involving criminally derived property of a value greater than $10,000 involving these bank accounts, in violation of a money laundering statute, 18 U.S.C. § 1957. Specifically:

   a. Between August 1, 2022 and October 26, 2022, BoA Account *1366 received $115,631 in receipts from Magic Nutrition, an entity known to facilitate the purchases of controlled substances from Meland on behalf of third parties like Ray Koga and others. On

---

[13] Violations of the Controlled Substances Act constitute "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7)(B) and § 1961(1)(D). Violations of the Food, Drug and Cosmetics Act do not constitute specified unlawful activity.

Case 1:23-mj-00392-JLW   Document 1-1   Filed 09/22/23   Page 18 of 20

October 27, 2022, Meland transferred $100,000 from BoA Account *1366 to BoA Account *0007. On this same day, Meland purchased an automobile using $100,704 in funds from BoA Account *0007.

    b. Between October 27, 2022 and January 9, 2023, BoA Account *1366 received an additional $108,756 in receipts from Magic Nutrition. On January 10, 2023, Meland made two transfers from BoA Account *1366 to BoA Account *0007 in the amounts of $100,000 and $119,000. Meland then wired $449,496.48 in funds from BoA Account *0007 to fund the purchase of real estate.

    c. Between January 10, 2023 and February 3, 2023, BoA Account *1366 received an additional $27,265 in receipts from Magic Nutrition. On February 3, 2023, Meland transferred $50,000 from BoA Account *1366 to BoA Account *4761. On this same day, a check cleared BoA Acct *4761 in the amount of $45,000 identified as a down payment on a truck.

(67) Finally, by comingling proceeds derived from the sale of controlled substances with other funds, under the guise of a facially legitimate online storefront, and utilizing the bank accounts of unrelated businesses involved in printing/copying and pilot car services, there is probable cause to believe that Meland has concealed the true nature and source of the illicit funds that are derived from the sale of controlled substances. Thus, the businesses are themselves a vehicle by which Meland is able to launder proceeds of specified unlawful activity in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and each of the business accounts (including any "clean" funds deposited in the accounts) facilitate the laundering activity. Transfers of proceeds from a business account into Meland's personal account (BoA Account *0007) add an additional layer of concealment.

(68) All property involved in a money laundering offense is subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and 18 U.S.C. § 982(a)(1).

(69) For all the foregoing reasons, the contents of BoA Account *1366, BoA Account *4761, BoA Account *0007, and FB Account *4192 are subject to forfeiture to the United States pursuant to 21 U.S.C. § 853(a), 21 U.S.C. § 881(a)(6), 18 U.S.C. § 981(a)(1)(A) and 18 U.S.C. § 982(a)(1).

(70) I respectfully submit that because monies deposited into a bank are fungible, easily hidden, and can be withdrawn or transferred by electronic or other means by any person with account access at all hours of the day or night, a restraining order pursuant to 21 U.S.C. 853(e) may

not be sufficient to ensure the availability of the property for forfeiture. Accordingly, I respectfully request that the Court issue the requested seizure warrant pursuant to 18 U.S.C. § 981(b) and 21 U.S.C. § 853(f).

Further affiant sayeth naught.

/s/ *Alberto Sanabria*
Alberto Sanabria
United States Postal Inspector
U.S. Postal Inspection Service

On this 22nd day of September, 2023, U.S. Postal Inspector Alberto Sanabria appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this Affidavit.

JOE L. WEBSTER
United States Magistrate Judge